## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BEDNASH & YURCHAK ADVERTISING, INC., | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. |
| | : | |
| LOCAL TV, LLC, d/b/a WNEP-TV, | : | |
| | : | (Electronically Filed) |
| Defendant. | : | **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Bednash & Yurchak Advertising, Inc., by its undersigned counsel, hereby complains of Defendant Local TV, LLC d/b/a/ WNEP-TV, as follows:

## I.     INTRODUCTION

1.     Plaintiff Bednash & Yurchak Advertising, Inc., a full service advertising agency, brings this action against Defendant Local TV, LLC, d/b/A WNEP-TV, in an effort to put a judicial halt to WNEP-TV's campaign to tarnish and/or destroy Plaintiff's business through false and/or misleading representations made directly to Plaintiff's clients.  As set forth more fully below, WNEP-TV has and continues to engage in the aforesaid misconduct in a retaliatory effort to, <u>inter alia</u>, unfairly compete with Plaintiff by enticing, encouraging and/or inducing Plaintiff's clients to terminate their long-standing agency agreements and/or

business relationships with Plaintiff and, instead, deal directly with WNEP, thereby eliminating the commission payable to Plaintiff. Such retaliatory and anti-competitive conduct must be immediately enjoined under the Lanham Act, 15 U.S.C. § 1125 et seq., as well as the various common law causes of action set forth herein.

## II.   PARTIES

2.     Plaintiff Bednash & Yurchak Advertising, Inc. ("Plaintiff") is a business corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business at R1175 Shoemaker Avenue, West Wyoming, PA 18644.

3.     At all times relevant hereto, Plaintiff served as a full service advertising agency, providing advertising, marketing and/or promotional services to clients through various media outlets located in Pennsylvania and other states, including New York, Delaware, New Jersey and Colorado.

4.     Upon information and belief, Defendant Local TV, LLC, d/b/a WNEP-TV ("Defendant" or "WNEP"), is a business corporation duly organized and existing under the laws of the State of Delaware, with a principal place of business at 300 Dave Cowens Drive, Newport, KY 41071.

5.     At all times relevant hereto, Defendant owned and/or operated a number of broadcast television stations in the United States, including WNEP,

which is located within the Middle District at 16 Montage Mountain Road, Moosic, PA 18507.

6.     WNEP was among the aforementioned media outlets from which Plaintiff bought advertising packages for its clients.

## III.   JURISDICTION AND VENUE

7.     This Court has jurisdiction over the Lanham Act claims set forth herein pursuant to 28 U.S.C § 1331, and the supplemental claims arising under common and/or state law pursuant to 28 U.S.C. § 1367(a).

8.     In addition to the foregoing, the Court has diversity jurisdiction over all claims set forth herein pursuant to 28 U.S.C. § 1332 in that Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

9.     Venue is proper in the Middle District of Pennsylvania pursuant to 28 USC § 1391 in that a substantial part of the events or omissions giving rise to this action occurred in this District, and/or Defendant is subject to personal jurisdiction in this District.

## IV.   FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

10.     Plaintiff is a full service advertising agency which is owned and/or operated by Stan Bednash and Paul Yurchak.

11. Prior to the formation of Plaintiff, Bednash and Yurchak were employed as account executives with WNEP in its sales department.

12. In or around 2007, Bednash was summoned to a meeting with WNEP's General Manger, Lou Kirchen, and WNEP's Controller/HR Manager, Bob Hawkins, to discuss various issues within the sales department.

13. At that time, Bednash voiced concerns and/or made complaints about the way in which sales operations/transactions were being handled by WNEP's Local Sales Manager, Ed Hart.

14. For example, due to Hart's failure and/or refusal to follow-up with a certain advertising opportunity, WNEP lost over $70,000.00 of business to another local station, WBRE/WYOU.

15. Following that meeting, Bednash's concerns/complaints were shared with the then General Sales Manager of WNEP, Chuck Morgan.

16. Morgan then approached Bednash who, once again, expressed the same concerns/complaints about Hart.

17. When questioned why he did not come to him personally, Bednash informed Morgan that it was WNEP's management that came to him and not *vice versa* and, with that said, it would have been difficult for Bednash to approach Morgan about his concerns because Hart is Morgan's cousin.

18.     Needless to say, from that point, the relationship between Bednash and Hart deteriorated.  For example, Hart even refused to speak with Bednash, despite the fact that Bednash was responsible for millions of dollars of revenue within the sales department.

19.     As things got progressively worse, Bednash and Yurchak decided to leave WNEP and fulfill their life long dream of starting their own advertising agency.

20.     Accordingly, Bednash and Yurchak resigned from WNEP and formed Plaintiff in 2008.

21.     Although WNEP did not initially believe that Bednash and Yurchak were leaving to form their own advertising agency, WNEP eventually realized that they were serious and asked Bednash and Yurchak to stay for a few more weeks due to the amount of revenue, projects and accounts they were working on at the time.  Bednash and Yurchak agreed to WNEP's request.

22.     Thereafter, Bednash and Yurchak successfully operated their new advertising agency and, in doing so, eventually built up a solid base of clients.

23.     Plaintiff has achieved continued business success through client satisfaction and referrals due to its reputation for quality work in the industry, and has become the "Agency of Record" for multiple businesses which advertise in Pennsylvania and other states through Plaintiff's representation.

24.    After the formation of its advertising agency, Plaintiff spent a significant portion of its clients' budget purchasing advertising packages from WNEP.

25.    In fact, in its first year of existence, Plaintiff spent approximately 67% of its clients' local television budgets on advertising packages from WNEP.

26.    Years later, however, Kirchen left WNEP and Morgan was promoted to General Manager.

27.    Mike Last became the new General Sales Manager at WNEP and Hart continued to serve as its Local Sales Manager.

28.    Following the departure of Kirchen -- who (along with her husband) was supportive of Bednash and Yurchak -- Hart began to retaliate against Bednash and Plaintiff for the aforesaid complaints and/or concerns Bednash expressed against Hart while Bednash was an employee of WNEP.

29.    To that end, Bednash and Yurchak were eventually called into a meeting with Last and Hart.

30.    At that time, Hart and Last informed Bednash and Yurchak that they would no longer work with and/or recognize Plaintiff as an advertising agency or pay Plaintiff a commission on advertising packages purchased for Plaintiff's clients from WNEP.

31.    Last and Hart did not provide Plaintiff with any reasonable basis or justification for their retaliatory actions, other than to generally state that they felt Plaintiff "did not represent them properly".

32.    Although Plaintiff continued to operate its advertising agency and made diligent efforts to continue to work with WNEP, WNEP's retaliatory and anti-competitive actions became progressively worse.

33.    Recently, Last, Hart and/or other members of management instructed -- and continue to instruct -- WNEP's sales staff to directly contact all of Plaintiff's clients to inform them that WNEP no longer recognized Plaintiff as a reputable advertising agency in the industry and, therefore, WNEP would no longer accept business from Plaintiff.

34.    In doing so, WNEP falsely stated to Plaintiff's clients that Plaintiff was not a reputable advertising agency and, therefore, would no longer do business with Plaintiff; falsely stated that Plaintiff did not represent them properly; falsely stated that Plaintiff was not acting in the best interests of the client; falsely stated that Plaintiff does not purchase advertising the right way; falsely stated that Plaintiff's clients were not getting what they paid for; falsely challenged the advertisements Plaintiff placed for clients on other media outlets; and falsely raised doubts with Plaintiff's clients as to Plaintiff's understanding and knowledge of the advertising industry.

35.   To make matters worse, WNEP informed Plaintiff's clients that WNEP would not accept any of their business unless the client dealt directly with WNEP and its internal account executives.

36.   WNEP's account executives also told Plaintiff's clients that if any of WNEP's account executives spoke with Bednash or Yurchak they would be fired from WNEP.

37.   WNEP further stated that Plaintiff was inappropriately directing its clients' advertising dollars to another station, WBRE/WYOU, because Plaintiff was "in bed" with one of the station's executives.

38.   The foregoing statements relative to Plaintiff's business were false and/or deliberately misleading to Plaintiff's clients as members of the consuming public.

39.   WNEP made such false and/or misleading statements to entice, encourage, induce and/or coerce Plaintiff's clients to terminate their long-standing agency agreements and/or established business relationships with Plaintiff and, instead, to deal directly with WNEP, thereby eliminating the commission payable to Plaintiff.

40.   As a result of WNEP's false and/or misleading representations of fact as aforesaid, long-standing clients have terminated their agency agreements and/or business relationships with Plaintiff, thereby causing actual harm to Plaintiff.

41.    WNEP's blatant misrepresentations will continue to result in actual and probable injury to Plaintiff in terms of lost contracts and/or business with established clients and the loss of prospective clients in the industry.

42.    Thus, unless enjoined, WNEP's false or misleading representations will cause further irreparable injury, for which Plaintiff has no adequate remedy at law.

## COUNT I

### LANHAM ACT - 15 U.S.C. § 1125(a)

43.    The preceding Paragraphs of this Complaint are incorporated herein by reference as if fully set forth.

44.    This claim is for a violation of the Lanham Act, 15 U.S.C. § 1125(a).

45.    The Lanham Act provides, in part, as follows:

(a) Civil action.

(1) Any person who, on or in connection with any goods or services, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –

(A) is likely to cause confusion or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by anther person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or

geographic origin of his or her or another person's goods, services or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

46.    For any such violation, the Lanham Act authorizes the Court to award Plaintiff actual damages, plus any sum above actual damages not in excess of treble the amount of actual damages, together with the cost of suit and reasonable attorneys' fees.  The Court is also authorized to increase the award of damages if the Court determines that the recovery is inadequate.

47.    As set forth more fully above, WNEP has made -- and continues to make -- a series of false and/or misleading statements designed to entice, encourage, induce and/or coerce Plaintiff's clients to terminate their long-standing agency agreements and/or established business relationships with Plaintiff and, instead, to deal directly with WNEP.

48.    As a result of WNEP's false and/or misleading representations of fact as aforesaid, lost long-standing clients have terminated their agency agreements and/or business relationships with Plaintiff, thereby causing actual harm to Plaintiff.

49.    At the time the aforesaid false or misleading representations were made, WNEP knew that the statements were false and/or misleading and that the

same would be material to the purchasing decisions of Plaintiff's clients as members of the purchasing public.

50.    WNEP's false and misleading statements as aforesaid were intended to cause injury to Plaintiff and have, in fact, accomplished that objective.

51.    The aforementioned acts of WNEP are likely to confuse and/or deceive and, it is believed and therefore averred, that WNEP has confused and/or deceived the public as to the services and commercial activities of Plaintiff, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) et seq.

52.    The aforementioned acts of WNEP constitute false or misleading representations of fact concerning the services and commercial activities of Plaintiff in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) et seq.

53.    The false or misleading statements constitute commercial speech by a party in commercial competition with Plaintiff.  Such statements were designed to influence Plaintiff's customers to buy WNEP's services and were disseminated directly to such customers as members of the purchasing public within the advertising industry.

54.    Plaintiff has been and will, in the future, be harmed and damaged by WNEP's false or misleading facts about the services provided by Plaintiff.

55. WNEP has created an actual and/or a reasonable likelihood of confusion in Plaintiff's customers' minds as to the nature, characteristics and qualities of Plaintiff's services, by virtue of their false or misleading statements.

56. The false and misleading representations of WNEP have resulted -- and will continue to result -- in actual or probable injury to Plaintiff, including loss of sales, loss of contracts and loss of business with established clients and/or prospective clients in the industry, as well as a loss of good will and damage to Plaintiff's reputation within the industry and among Plaintiff's customers.

57. Unless enjoined, WNEP's false or misleading statements will cause Plaintiff to suffer immediate and irreparable harm, for which Plaintiff has no adequate remedy at law.

58. WNEP's false or misleading representations as aforesaid affected interstate commerce because they affected and harmed -- or, unless enjoined, will affect and harm -- Plaintiff's out of state business with media outlets in New York, Delaware, New Jersey and Colorado.

59. Under the Lanham Act, this Court has the power to grant judgment against WNEP for damages and to grant the injunctive relief requested to prevent WNEP's intentional violation of Plaintiff's rights under the Lanham Act.

WHEREFORE, Plaintiff Bednash & Yurchak Advertising, Inc. respectfully requests that judgment be entered in its favor and against Defendant Local TV, LLC, d/b/a/ WNEP-TV, and further demands the following relief:

a. temporary, preliminary and permanent injunctive relief enjoining and restraining WNEP from:

   i. using or making any false, disparaging or otherwise misleading representation of fact relating in any way to Plaintiff and/or its services; and

   ii. engaging in any other form of marketing, advertising or promotion that in any way falsely portrays Plaintiff and/or its services.

b. for the entry of an Order compelling WNEP to:

   i. provide a listing of each and every customer fro whom it has provided advertising services since October 1, 2010;

   ii. provide a complete accounting, with supporting documentation, for all revenues derived or generated from the delivery of all such advertising services since October 1, 2010;

   iii. disgorge all revenues derived since October 1, 2010 as a direct or indirect result of WNEP's false and misleading representations; and

   iv. issue retractions and/or advise Plaintiff's customers of the false or misleading nature of WNEP's representations relative to Plaintiff.

c. for an award of compensatory damages, trebled under 15 U.S.C. § 1117;

d. for an award of attorneys' fees and costs of suit under 15 U.S.C. § 1117; and

e. for such other and further relief to which Plaintiff may be justly entitled.

## COUNT II

### UNFAIR COMPETITION

60.     The preceding Paragraphs of this Complaint are incorporated herein by reference as if fully set forth.

61.     By virtue of their conduct, as set forth above, WNEP has intentionally engaged in unfair methods of competition with Plaintiff by, inter alia, making false or misleading statements of fact concerning Plaintiff and its services.

62.     The aforesaid false or misleading representations actually confused and/or deceived and are likely to continue to confuse and/or deceive Plaintiff's customers as members of the purchasing public as to the services and commercial activities of Plaintiff.

63.     The false or misleading statements constitute commercial speech by a party in commercial competition with Plaintiff.  Such statements were designed to influence Plaintiff's customers to buy WNEP's services and were disseminated directly to such customers as members of the purchasing public within the advertising industry.

64.     The foregoing false or misleading representations are material in that they are likely to influence decisions of Plaintiff's customers in the advertising industry and, it is believed and therefore averred, that said false or misleading

representations have already influenced such decisions in that certain of Plaintiff's clients have already terminated their business relationships with Plaintiff in favor of dealing directly with WNEP.

65.     The aforesaid unlawful acts were undertaken by WNEP intentionally, willfully, maliciously and in bad faith, and for the sole purposes of injuring Plaintiff and its business.

66.     The false or misleading representations have resulted -- and will continue to result -- in actual or probable injury to Plaintiff in terms of lost sales, lost contracts and lost business with established clients and/or prospective clients in the industry, as well as a loss of good will and damage to Plaintiff's reputation within the industry and among its customers.

67.     Unless enjoined, WNEP's false or misleading representations will cause Plaintiff to suffer immediate and irreparable future harm, for which Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff Bednash & Yurchak Advertising, Inc. respectfully requests that judgment be entered in its favor and against Defendant Local TV, LLC, d/b/a/ WNEP-TV, and further demands the following relief:

    a. temporary, preliminary and permanent injunctive relief enjoining and restraining WNEP from:

        i. using or making any false, disparaging or otherwise misleading representation of fact relating in any way to Plaintiff and/or its services; and

      ii.   engaging in any other form of marketing, advertising or promotion that in any way falsely portrays Plaintiff and/or its services.

  b.  for the entry of an Order compelling WNEP to:

      i.   provide a listing of each and every customer for whom it has provided advertising services since October 1, 2010;

      ii.  provide a complete accounting, with supporting documentation, for all revenues derived or generated from the delivery of all such advertising services since October 1, 2010;

      iii. disgorge all revenues derived since October 1, 2010 as a direct or indirect result of WNEP's false and misleading representations; and

      iv. issue retractions and/or advise Plaintiff's customers of the false and misleading nature of WNEP's representations relative to Plaintiff.

  c.  for an award of compensatory damages;

  d.  for an award of punitive damages; and

  e.  for such other and further relief to which Plaintiff may be justly entitled.

## COUNT III

## TORTIOUS INTERFERENCE WITH EXISITNG/PROSPECTIVE BUSINESS RELATIONS

68.    The preceding Paragraphs of this Complaint are incorporated herein by reference as if fully set forth.

69.   At all times relevant hereto, WNEP knew that Plaintiff had Agency of Record agreements and/or established business relationships with multiple clients in the advertising industry.

70.   Plaintiff had a legitimate and reasonable expectation of continuing to derive current and/or future business from its existing client base and business relationships.

71.   WNEP intentionally and purposefully interfered with Plaintiff's agreements and/or established business relationships with Plaintiff's clients as well as Plaintiff's prospective business relationships by encouraging, enticing, inducing and/or coercing Plaintiff's clients to terminate their existing agreements/business relationships with Plaintiff and/or not to enter into new or prospective contractual relations with said clients and, instead, to deal directly with WNEP based on the false or misleading representations set forth more fully above.

72.   WNEP's motivation in this regard was to cause direct harm to Plaintiff and to assist WNEP in eliminating the commission payable to Plaintiff.

73.   WNEP has no privilege or justification to interfere with Plaintiff's existing or prospective contractual relationships.

74.   The aforesaid acts were undertaken by WNEP intentionally, willfully, maliciously and in bad faith, and for the sole purposes of injuring Plaintiff and its business.

75.    WNEP's tortious interference has resulted -- and will continue to result -- in actual or probable injury to Plaintiff in terms of lost sales, lost contracts and lost business with established clients and/or prospective clients in the industry, as well as emotional distress and the loss of good will and damage to Plaintiff's reputation within the industry and among its customers.

76.    Unless enjoined, WNEP's tortious interference will cause Plaintiff to suffer immediate and irreparable future harm, for which Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff Bednash & Yurchak Advertising, Inc. respectfully requests that judgment be entered in its favor and against Defendant Local TV, LLC, d/b/a/ WNEP-TV, and further demands the following relief:

a. temporary, preliminary and permanent injunctive relief enjoining and restraining WNEP from:

  i.   using or making any false, disparaging or otherwise misleading representation of fact relating in any way to Plaintiff and/or its services; and

  ii.  engaging in any other form of marketing, advertising or promotion that in any way falsely portrays Plaintiff and/or its services.

b. for the entry of an Order compelling WNEP to:

  i.   provide a listing of each and every customer for whom it has provided advertising services since October 1, 2010;

    ii.    provide a complete accounting, with supporting documentation, for all revenues derived or generated from the delivery of all such advertising services since October 1, 2010;

   iii.    disgorge all revenues derived since October 1, 2010 as a direct or indirect result of WNEP's false and misleading representations; and

   iv.    issue retractions and/or advise Plaintiff's customers of the false and misleading nature of WNEP's representations relative to Plaintiff.

c.  for an award of compensatory damages;

d.  for an award of punitive damages; and

e.  for such other and further relief to which Plaintiff may be justly entitled.

## COUNT IV

### DEFAMATION

77.    The preceding Paragraphs of this Complaint are incorporated herein by reference as if fully set forth.

78.    WNEP's false or misleading statements as aforesaid relating to Plaintiff and its business activities and services are defamatory.

79.    It is abundantly clear that the false and defamatory statements apply to Plaintiff, and WNEP published, made and/or otherwise communicated these false and defamatory statements directly to Plaintiff's clients.

80.    Indeed, Plaintiff's clients -- as the recipients of WNEP's false and defamatory communications -- would understand and have understood the

defamatory meaning of such communications and that said communications applied to Plaintiff.

81.     The defamatory statements falsely ascribe to Plaintiff a lack of skill and competence in the advertising industry sufficient to constitute defamation per se.

82.     The aforesaid defamatory statements were made by WNEP intentionally, willfully, maliciously and in bad faith, and for the sole purposes of injuring Plaintiff and its business.

83.     WNEP's defamatory statements have resulted -- and will continue to result -- in actual or probable injury to Plaintiff in terms of lost sales, lost contracts and lost business with established clients and/or prospective clients in the industry, as well as emotional distress and the loss of good will and damage to Plaintiff's reputation within the industry and among its customers.

84.     Unless enjoined, WNEP's defamatory statements will cause Plaintiff to suffer immediate and irreparable future harm, for which Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff Bednash & Yurchak Advertising, Inc. respectfully requests that judgment be entered in its favor and against Defendant Local TV, LLC, d/b/a/ WNEP-TV, and further demands the following relief:

   a.  temporary, preliminary and permanent injunctive relief enjoining and
       restraining WNEP from:

     i. using or making any false, disparaging or otherwise misleading representation of fact relating in any way to Plaintiff and/or its services; and

     ii. engaging in any other form of marketing, advertising or promotion that in any way falsely portrays Plaintiff and/or its services.

b.  for the entry of an Order compelling WNEP to:

     i.   provide a listing of each and every customer for whom it has provided advertising services since October 1, 2010;

     ii.  provide a complete accounting, with supporting documentation, for all revenues derived or generated from the delivery of all such advertising services since October 1, 2010;

     iii.  disgorge all revenues derived since October 1, 2010 as a direct or indirect result of WNEP's false and misleading representations; and

     iv.  issue retractions and/or advise Plaintiff's customers of the false and misleading nature of WNEP's representations relative to Plaintiff.

c.  for an award of compensatory damages;

d.  for an award of punitive damages; and

e.  for such other and further relief to which Plaintiff may be justly entitled.

## COUNT V

## COMMERCIAL DISPARAGEMENT/TRADE LIBEL

85.    The preceding Paragraphs of this Complaint are incorporated herein by reference as if fully set forth.

86.    As set forth more fully herein, WNEP has made and/or otherwise communicated false, defamatory and/or otherwise disparaging statements about Plaintiff and its services and commercial activities in the advertising industry.

87.    WNEP knew or reasonably should have known that said statements were false, defamatory and/or otherwise disparaging, and acted with reckless disregard of the veracity of such statements.

88.    WNEP knew or reasonably should have known that the false, defamatory and/or disparaging statements would cause pecuniary loss to Plaintiff in the advertising industry.

89.    The aforesaid defamatory statements were made by WNEP intentionally, willfully, maliciously and in bad faith, and for the sole purposes of injuring Plaintiff and its business.

90.    The false, defamatory and/or disparaging statements have adversely affected the marketability of Plaintiff's services in the adverting industry, and have caused, and will continue to cause, pecuniary loss to Plaintiff.

91.    Indeed, WNEP's defamatory statements have resulted -- and will continue to result -- in actual or probable injury to Plaintiff in terms of lost sales, lost contracts and lost business with established clients and/or prospective clients in the industry, as well as emotional distress and the loss of good will and damage to Plaintiff's reputation within the industry and among its customers.

92.     Unless enjoined, WNEP's false, defamatory and/or disparaging statements will cause Plaintiff immediate and irreparable future harm, for which Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff Bednash & Yurchak Advertising, Inc. respectfully requests that judgment be entered in its favor and against Defendant Local TV, LLC, d/b/a/ WNEP-TV, and further demands the following relief:

 a. temporary, preliminary and permanent injunctive relief enjoining and restraining WNEP from:

  i. using or making any false, disparaging or otherwise misleading representation of fact relating in any way to Plaintiff and/or its services; and

  ii. engaging in any other form of marketing, advertising or promotion that in any way falsely portrays Plaintiff and/or its services.

 b. for the entry of an Order compelling WNEP to:

  i. provide a listing of each and every customer for whom it has provided advertising services since October 1, 2010;

  ii. provide a complete accounting, with supporting documentation, for all revenues derived or generated from the delivery of all such advertising services since October 1, 2010;

  iii. disgorge all revenues derived since October 1, 2010 as a direct or indirect result of WNEP's false and misleading representations; and

  iv. issue retractions and/or advise Plaintiff's customers of the false and misleading nature of WNEP's representations relative to Plaintiff.

c.      for an award of compensatory damages;

d.      for an award of punitive damages; and

e.      for such other and further relief to which Plaintiff may be justly
        entitled.

Respectfully submitted:

/s/ Frank J. Tunis, Jr.
George A. Reihner
Frank J. Tunis, Jr.
WRIGHT & REIHNER, P.C.
148 Adams Avenue
Scranton, PA 18503
(570) 961-1166

Dated: December 4, 2013